JzFITZSIMMONS, Judge.
The issue presented on appeal is a determination of respective liability insurance coverage by two insurance companies. Thomas L. Lambert was operating a 1990 Isuzu Trooper registered in the name of Lambert’s Orthotics & Prosthetic, Inc., when he was involved in a multi-vehicle collision. The liability of Mr. Lambert and the existence of primary liability coverage for the vehicle in question by Commercial Union Insurance Company (Commercial) are not in controversy. The dispute is focused upon the existence vet non of shared pro-rata primary liability coverage by a second insurer, Prudential Property and Casualty Insurance Company (Prudential). Commercial filed a motion for summary judgment that the coverages afforded by the two insurance companies should be applicable on a pro rata basis depending upon the respective coverage limits. In its opposition to motion for summary judgment, Prudential asked for summary judgment in its favor on the identical issue. It was stipulated by Commercial at the hearing on the motion for summary judgment that the memorandum in opposition would constitute a cross motion for summary judgment on behalf of Prudential. The district court denied Commercial’s motion for summary judgment; it granted summary judgment in favor of Prudential, dismissing it from the case[2]. The summary judgment in favor of Prudential is reversed. Summary judgment is granted in favor of Commercial.
LAW
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Louisiana Code of Civil Procedure article 966 provides that summary judgment is favored[3]. Even prior to the relatively recent legislative amendment favoring summary judgments, the interpretation of insurance contracts has generally comprised legal questions that lend themselves to proper resolution via a motion for summary judgment. Zanca v. Breaux, 590 So.2d 821, 824 (La.App. 4th Cir.1991).
The Prudential policy was issued in the name of T. Lambert personally. In amended declarations, the company-owned 1990 Isuzu Trooper was listed as a covered car on Mr. Lambert’s personal policy.[4] The “GENERAL PROVISIONS” section indicates:
DECLARATIONS
The Declarations ... lists the named insured and describes the cars this policy covers. Refer to the Declarations to see which parts of the policy apply and what *376 amounts of insurance you have for each of your cars. (Emphasis in original.)
Under the section entitled “Special Conditions,” [5] a paragraph reads:
1. Other Insurance. The OTHER INSURANCE provisions of this policy are replaced by the following: If there is other insurance which covers a loss under this part[6], we will pay only those damages that are excess over amounts payable under other insurance up to our limit of liability. (Bold in original; underscoring added.)
Thereafter, in a section identified as “HOW WE WILL SETTLE A CLAIM (PART 1),” the Prudential policy addresses its relative contractual obligation for those ears described on the declarations in sections entitled “OTHER INSURANCE — YOUR CAR” and “OTHER INSURANCE — NON-OWNED CAR (INCLUDES A SUBSTITUTE CAR).” The “OTHER INSURANCE — YOUR CAR” provision indicates |4that Prudential will “pay our share of the loss. Our share is the proportion our limit bears to the total of all applicable limits.” (Underscoring supplied; bold in original). This is the clause upon which Commercial presents its argument.
Trepidation in the interpretation of the insurance contract at hand is compounded by the fact that there is no definition of “your car(s).” The phrase is critical to the coverage determination because the Isuzu Trooper is a listed vehicle on the declarations page; yet, it is not owned by the insured, Tommy Lambert. The pivotal question in the determination of the classification of coverage is whether the automobile at issue qualifies as “your car” pursuant to the insurance contract.
There is no specification in the policy that the company-owned car falls within the purview or “your car”, entitling the insured to primary, as opposed to excess coverage. Conversely, the provisions of the policy do not condition the term “your ear” on the concept of car ownership, or an “owned car.” The Lambert vehicle, however, does not fall within the definition of “non-owned car.” The introductory paragraph of the “DEFINITION” section of the policy states that “[t]he words defined below are used throughout the policy.” A review of the described terms of the Prudential policy provides the definition of a “non-owned car” as follows: “A non-owned car is a car which is not owned by, registered in the name of or furnished or available for the frequent use of you_” (underlining added; bold in original).
Further compounding matters is a separate provision entitled “REGULARLY USED NON-OWNED CARS” in the “Part 1 LIABILITY’ section of the agreement. It reads:
We will not pay for bodily injury or property damage caused by you or a household resident using a non-owned car not insured under this part, regularly used by you or a household resident. (Underscoring added; bold in original.)
IsAlthough the phrase “regularly used non-owned cars” is an oxymoron if one adheres to the policy definition of the term, the paragraph lends additional support to the lack of dependence of the term ‘YOUR CAR” on ownership. Moreover, this exclusionary clause does not apply to the subject vehicle because the ear is, distinguishably, insured as a listed vehicle. Elsewhere, in the section entitled “WHAT CARS ARE COVERED”, under the heading of “OTHER NON-OWNED CARS,” the policy additionally reads as follows: “In addition to SUBSTITUTE CARS, we will cover a non-owned car.... The non-owned car has the same coverage as any one of your cars insured with us.” The Isuzu vehicle was, however, available for Mr. Lambert’s regular use. It does not fall within any policy classification of a “non-owned car.”
The language contained within a policy of insurance is to be construed according to its plain meaning. If the verbiage is *377 nebulous, as is the ease herein, the ambiguous portions of the contract are to be interpreted in favor of the insured and against the insurer, who drafted the policy. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183; Sanders v. Ashland Oil, Inc. 94-1469, p. 6 (La.App. 1 Cir. 5/5/95), 656 So.2d 643, 647, writ denied, 95-1797 (La.11/3/95), 661 So.2d 1389. The conflicting provisions regarding excess coverage are, likewise, to be interpreted in favor of the insured and the existence of pro-rata primary coverage, rather than excess coverage. See Garcia v. St. Bernard Parish School Board, 576 So.2d 975, 976 (La.1991). After an exhaustive review of the terms of the Prudential policy, we find that, within the context of the policy provisions, and applying the guiding principles of construction of insurance contracts, the phrase “your ear” is intended to encompass vehicles that are listed for coverage. Thus, the insurance policy at hand should be interpreted to | (¡designate coverage for the insured company-owned Isuzu as a vehicle subject to primary pro-rata coverage with Commercial.
The summary judgment in favor of Prudential is thus reversed. Summary judgment is granted in favor of Commercial. Prudential is contractually obligated to provide primary coverage on a pro-rata basis with Commercial commensurate with the companies’ respective limits of liability coverage. Costs of this appeal are to be borne evenly by the parties.
REVERSED AND RENDERED.

. The limits of Commercial’s primary liability coverage exceeded the total sum of the settlement, thereby preempting the existence of excess coverage.

. As amended by Acts 1996, First Extraordinary Session, No. 9, effective May 1, 1996.

. The effective date of the amendment to the declarations coincides with the date of the vehicular accident under review, i.e., 5/5/92.

. The replacement provision is undated. It is not presented as an addendum to the policy, but precedes the "OTHER INSURANCE — YOUR CAR" and "OTHER INSURANCE — NON-OWNED CAR” sections.

. "Part 1 Liability” section.